UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                                            :
ZAINAB ALI, an infant by her mother and natural             :
guardian SAMAIRA BIBI, and SAMAIRA BIBI,                    :
individually,                                               :              12 Civ. 2867 (JPO)
                                          Plaintiffs,       :
                                                            :          MEMORANDUM AND
                  -against-                                 :               ORDER
                                                            :
THE UNITED STATES OF AMERICA                                :
                                          Defendants.       :
                                                            :
----------------------------------------------------------- X
                                                            :
ZAINAB ALI, an infant by her mother and natural             :
guardian SAMAIRA BIBI, and SAMAIRA BIBI,                    :
individually,                                               :
                                          Plaintiffs,       :              12 Civ. 4990 (JPO)
                                                            :
                  -against-                                 :          MEMORANDUM AND
                                                            :               ORDER
KIMBERLY GINYARD, M.D., et al.                              :
                                          Defendants.       :
                                                            :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

        These cases arise from an allegation of medical practice.  One case, *Ali et al. v. United
States*, No. 12 Civ. 2867, was originally filed in this Court ("the Federal Action").  The other
case, *Ali et al. v. Ginyard et al.*, No. 12 Civ. 4990, was commenced in New York state court and
has since been removed to this Court ("the Removed Action").  The United States Government
has moved to substitute itself as a party defendant in lieu of two defendants in the Removed
Action and to dismiss both cases for lack of subject matter jurisdiction.  For the reasons that
follow, the Government's motions are granted and both cases are dismissed.

I.      **Background**[1]

Plaintiff Samaira Bibi gave birth to Plaintiff Z.A. on February 9, 2008 at Good Samaritan

Hospital (GSH) in Suffern, New York.  For a period of time before Z.A.'s birth, Bibi had

received prenatal care from Removed Action Defendant Dr. Kimberly Ginyard at the Monsey

Family Medical Center (MFMC).  Removed Action Defendant Community Medical and Dental

Care, Inc. (CMDC) is MFMC's parent company and, from January 14, 2005 through the period

of time relevant to this case, had been deemed eligible for Federal Torts Claim Act (FTCA)

malpractice coverage by the Department of Health and Human Services (HHS).  At GSH,

Ginyard was the attending physician at Z.A.'s birth; Removed Action Defendants Lavecchia and

Smith provided care to Bibi as nurses.  Z.A. was discharged from GSH on February 11, 2008.

The discharge summary indicated that Z.A. suffered from "brachial plexus palsy/erbs palsy."

At all times relevant to this case, Ginyard was an employee of CMDC.  When Ginyard

treated Bibi, she did so "in [her] capacity as an employee of CMDC at CMDC's Monsey Family

Medical Center."  (Dkt. No. 19 at ¶ 2.)  Although physicians treat patients at CMDC's facilities,

these facilities are not birthing centers.  Thus, when a patient goes into delivery, CMDC patients

are admitted to a hospital for delivery.  CMDC accordingly requires its doctors to have admitting

privileges with hospitals and Ginyard maintained admitting privilege at GSH.  Ginyard admitted

Bibi to GSH for delivery of Z.A. on February 9, 2008 because MFMC lacked the resources

necessary for deliveries, but affirms that all treatment that Ginyard provided to Bibi "was in

---

[1] Because the Government has moved to dismiss pursuant to Rule 12(b)(1), not Rule 12(b)(6), the Court may consider evidence beyond the pleadings without converting this motion into one for summary judgment.  *See, e.g.*, *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").  All facts in this opinion are taken from the exhibits filed by the parties in support of their filings.

[Ginyards's] capacity as an employee of CMDC, and not as an employee of [GSH]."  (Dkt. No. 19 at ¶ 5.)  CMDC expected Ginyard to admit patients to private facilities as necessary for patient care.  This practice by Ginyard and CMDC accorded with HHS policy, which provides that "[a] covered individual may follow a covered entity's patient to a local non-health center site in order to maintain continuity of care."  (Dkt. No. 21, Ex. C.)  Ginyard adds that she "did not receive monetary compensation for the services [she] provided Samaira Bibi from any sources other than the regular compensation that I received from CMDC."  (Dkt. No. 19 at ¶ 6.)

Bibi affirms that, until this litigation began, she was unaware of the fact that CMDC was a federally insured clinic and did not have "any idea that [Ginyard] was a federal employee, either at [CMDC] or at [GSH]."  (Dkt. No. 16, Ex. B, at ¶7.)  Bibi adds that she "did not know how severe the injury [to Z.A.] was or whether the injury was caused by a doctor," noting that:

> In May 2008, when Z.A. was only three months old, I consulted with an attorney regarding the injury.
>
> I was informed that erbs palsy injuries sometimes resolve on their own and that erbs palsy injuries are not necessarily caused by the actions of the doctor.  At that early date, it was too soon for a determination to be made as to whether a viable lawsuit exists.
>
> Z.A. received therapy through the Early Intervention program.  She received EMGs to monitor the injury.  Z.A. was also seen by Dr. Terry Amarel at Montefiore Medical Center Department for Orthopedic Surgery.
>
> On May 17, 2010, Dr. Amarel determined that Z.A.'s injury was severe enough to require surgery.  The surgery took place on June 10, 2010.  Z.A. had a second surgery for this injury in March, 2011.
>
> On December 13, 2010, I retained Ronemus & Vilensky to file suit on behalf of myself and Z.A.  After meeting with Michael Ronemus, I had enough facts to determine that the injury was severe, permanent, and that it could have been caused by the doctor who delivered Z.A.

(Dkt. No. 16, Ex. B, at ¶¶ 9-14.)  Represented by counsel, Plaintiffs commenced an action in the

Supreme Court of the State of New York, Rockland County on February 8, 2011.  In relevant

part, the complaint filed in state court alleges that "on or about July 8, 2007, through on or about

February 22, 2008 . . . the medical and nursing services rendered by the defendants . . . were

negligent and constituted medical and nursing malpractice in that the defendant failed to properly

treat the plaintiff for her pregnancy, labor and delivery of the infant plaintiff," resulting in

injuries to Z.A.  This state court complaint asserted three claims: negligent medical care, lack of

informed consent, and a claim by Bibi for loss of services of her child.

On July 1, 2011, HHS received the administrative claim submitted by Plaintiffs.  Under

"Basis of Claim," the administrative claim alleged:

> Claimant Samaira Bibi gave birth to [Z.A.] on February 9, 2008 at Good
> Samaritan Hospital of Suffern (GSH) located at 255 Lafayette Avenue, Suffern,
> NY 10901.  During her labor and delivery she was attended to by various staff
> members at GSH, including but not limited to KIMBERLY GINYARD, M.D.,
> JOYCE LA VECCHIA, R.N., and SMITH, R.N.  An action for the injuries
> claimed herein was brought in the New York State Supreme Court against GSH
> and other various providers, including Monsey Family Medical Center where
> claimant received prenatal care.  It is claimed that as a result of medical
> malpractice of the Respondent, by its agents, servants, and/or employees, in
> failing to properly treat the claimants for the prenatal care, labor and delivery of
> the infant, failure to perform the proper maneuvers during delivery, in applying
> excessive force to the infant's brachial plexus during delivery, that the infant
> suffered right brachial plexus injury.  Samaira Bibi is making a claim for loss of
> services of the infant claimant.

HHS did not reach a final decision on this claim because Plaintiffs elected to invoke their right to

file suit after HHS had not acted on the claim more than six months after it was filed.

On April 12, 2012, Plaintiffs commenced the Federal Action.  In that case, which arises

from the same allegations of malpractice as the Removed Action, Plaintiffs named the United

States of America as the defendant, relied expressly on the FTCA as the basis for their action, and referenced the administrative claim received by HHS on July 1, 2011.

On June 5, 2012, the United States Attorney for the Southern District of New York certified, pursuant to 28 C.F.R. § 15.4(b), that Ginyard and CMDC were employees of the United States and were acting within the scope of their employment for purposes of Plaintiffs' claims against them in the Removed Action Complaint.  On June 26, 2012, pursuant to 42 U.S.C. § 233(c) and 28 U.S.C. § 2679(d)(2), CMDC and Ginyard removed the state proceedings in Rockland County to this Court.  The Removed Action was docketed as No. 12 Civ. 4990.

## II.    Discussion

### A.    Substitution of the United States as a Defendant in the Removed Action

#### 1.    Applicable Law

"The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."  *United Staets v. Orleans*, 425 U.S. 807, 813 (1976).  Specifically, through the FTCA, the United States has effected a partial waiver of its sovereign immunity for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Thus, "for the government to be liable for an individual defendant's conduct, (1) that individual must be an 'employee of the Government' as that term is used in the FTCA, and (2) he must have been 'acting within the scope of his office or

employment' when the alleged tort occurred." *Rosenblatt v. St. John's Episcopal Hosp.*, No. 11 Civ. 1006, 2012 WL 294518, at *4 (E.D.N.Y. Jan. 31, 2012) (citing 28 U.S.C. § 1346(b)(1)).

The FTCA serves two purposes: "to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005). The FTCA remedy against the United States is exclusive of any other civil action against the individual defendant. 28 U.S.C. § 2679(b)(1). Pursuant to 28 U.S.C. § 1346(b)(1), "federal courts maintain exclusive jurisdiction over FTCA claims." *A.Q.C. ex rel. Castillo v. Bronx-Lebanon Hosp. Ctr.*, No. 11 Civ. 2656, 2012 WL 170902, at *3 (S.D.N.Y. Jan. 20, 2012).

"[E]mployee[s] of the Government" are defined as "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. This definition does not include independent contractors. *See, e.g.*, *B & A Marine Co., Inc. v. Am. Foreign Shipping Co., Inc.*, 23 F.3d 709, 713 (2d Cir. 1994) ("[T]he FTCA explicitly excludes liability of the Government for the wrongful act or omission of an independent contractor." (citation omitted)). "[W]hether an individual is a federal employee or an independent contractor is a matter of federal law." *Rosenblatt*, 2012 WL 294518, at *4 (citing *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990)).

The FTCA covers public health service employees acting within the scope of their employment. Section 233(a) of the Public Health Service Act of 1944, 58 Stat. 682, 42 U.S.C. § 201 *et seq.*, sets forth that the remedy against the United States provided by the FTCA

for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).  Thus, "Section 233(a) grants absolute immunity to [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct."  *Hui v. Castaneda*, 130 S. Ct. 1845, 1851 (2010); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) (noting that § 233(a) "protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead").  In effect, the United States "insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties."  *Cuoco*, 222 F.3d at 108.

This leads to the question of who qualifies as an "employee" of the Public Health Service.  42 U.S.C. § 233 offers the following definition:

[S]ubject to the approval by the Secretary [of Health and Human Services], [a public or non-profit private entity receiving Federal funds under section 254b of this title], and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner . . . shall be deemed to be an employee of the Public Health Service . . .

42 U.S.C. § 233(g)(1)(A) and (4).  "Under the plain language of § 233(g)(1)(A), the term 'contractor of such an entity who is a physician' is limited to individual physicians who contract with the entity."  *Fan ex rel. Zu Hua Chen v. United States*, No. 04 Civ. 9540, 2007 WL

1032304, at *13 (S.D.N.Y. Apr. 3, 2007).  Thus, employees of the public health service include

covered public or non-profit private entities and, *inter alia*, their physician-employees.

HHS is empowered by 42 U.S.C. § 233(g) to "deem" federally funded health centers to

be employees of the Public Health Service; "[a]ny suit filed against an entity so deemed must be

asserted pursuant to the FTCA."  *A.Q.C.*, 2012 WL 170902, at *3 (citing 42 U.S.C. § 233(a)).[2]

"Once HHS deems an entity or individual a Public Health Service employee, this determination

'shall be final and binding upon the Secretary and the Attorney General and other parties to any

civil action or proceeding.'"  *Rosenblatt*, 2012 WL 294518, at *4 (quoting 42 U.S.C. §

233(g)(1)(F)); *see also Bogues v. United States*, 703 F. Supp. 2d 318, 319 (S.D.N.Y. 2010) ("The

Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA") . . . amended § 224 of

the PHSA to extend FTCA coverage to certain health centers that receive federal funding under §

330 of the PHSA, 42 U.S.C. § 254b, by authorizing [HHS] to 'deem' them employees of the

Public Health Service." (citing 42 U.S.C. § 233(g)-(n))).

The next question is how to ascertain whether an individual deemed a Public Health

Service employee was acting within the scope of their employment.  The answer is usually based

on a certification by the Attorney General:  "[W]here a tort action is brought against a federally

funded public health center . . . for conduct within the scope of its federal employment, the

Attorney General . . . may certify that the health center was indeed acting as a federal employee

at the time of the incident."  *Celestine*, 403 F.3d at 80 (citing 28 U.S.C. § 2679(d)).

---

[2] A principal component of the federal health center program is the provision of federal grant
funding under § 330 to "community health centers," defined by statute as entities "that serve[] a
population that is medically underserved, or a special medically underserved population
comprised of migratory and seasonal agricultural workers, the homeless, and residents of public
housing, by providing . . . required primary health services . . . and . . . additional health services
. . . necessary for the adequate support of the primary health services."  42 U.S.C. § 254(b).

Attorney General certification pursuant 28 U.S.C. § 2679(d) is *conclusive* for purposes of removal. *Id.* To that end, 28 U.S.C. § 2679 provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

Thus, "[o]nce such a case is removed, the United States can replace the named defendant as the allegedly liable party–and the case proceeds as a FTCA suit." *Celestine*, 403 F.3d at 80; *see also Delgado v. Our Lady of Mercy Med. Ctr.*, No. 06 Civ. 5261, 2007 WL 2994446, at *2 (S.D.N.Y. Oct. 12, 2007) ("Because the remedy provided by the FTCA against the United States is exclusive, the United States must be substituted in place of the health service parties if the conditions of certification set forth in the relevant statutes are met."). This scope-of-employment certification is often generated by the local United States Attorney, as designee of the Attorney General. *See, e.g.*, *Infante ex rel. Wilborne v. The Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 846, 2007 WL 1334966, at *1 (S.D.N.Y. May 7, 2007); *Anglin v. McDonald*, No. 06 Civ. 5676, 2006 WL 3316983, at *1 (S.D.N.Y. Nov. 14, 2006).

While plaintiffs may not challenge § 2679(d) scope-of-employment certifications for purposes of *removal* analysis, *Osborn v. Haley*, 549 U.S. 225, 241 (2007), they may invoke judicial review of such certifications by raising a challenge as part of *substitution* analysis, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). If a plaintiff raises such a challenge and "allege[s] with particularity facts relevant to the scope of employment issue," then

9

a district court "conducts a *de novo* review of a 28 U.S.C. § 2679(d) certification by the Attorney General (or his designee)." *United States v. Tomscha*, 150 F. App'x 18, 19 (2d Cir. 2005) (citation omitted). For purposes of this review, the facts are read in the light most favorable to plaintiff. *Marley v. Ibelli*, 203 F. Supp. 302, 308 (S.D.N.Y. 2001) (citing *McHugh v. Univ. of Vermont*, 966 F.2d 67, 74 (2d Cir. 1992) *overruled on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007)).

In conducting this review, a district court applies state law principles pertaining to when tortious conduct falls within the scope of a party's employment. *See McHugh*, 966 F.2d at 75. Under New York law, an employee's tortious acts fall within the scope of his or her employment if "done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979) (internal quotations omitted). In determining whether an employee's actions fell within the scope of employment, five factors are particularly relevant: (1) the connection between the time, place and occasion for the act; (2) the history of the relationship between employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated. *See id.*

### 2.    Application of Law to Facts

Here, HHS deemed CMDC a Public Health Service employee, effective January 15, 2005. Ginyard was an employee of CMDC at all times relevant to Plaintiffs' claims. The United States Attorney for the Southern District of New York has issued a scope-of-employment certification for CMDC and Ginyard certifying that CMDC and Ginyard are "employees of the United States of America and were acting within the scope of employment for purposes of

claims against them in connection with the labor and delivery and pre-natal care given to

Plaintiffs between July 4, 2007 and February 22, 2008." This certification is conclusive as to

removal. 28 U.S.C. § 2679(d)(2).

In light of CMDC's status at all relevant time periods as a federally funded health center

"deemed" by HHS to be an "employee of the United States," substitution of the United States for

CMDC as a party defendant is appropriate. The Court accordingly concludes that the United

States must be substituted for CMDC as a party defendant.

However, Plaintiffs, echoed by GSH and Nurse Joyce Lavecchia ("GSH/JL"), object to

the substitution of the United States for Ginyard. They argue that Ginyard was not acting as an

employee of CMDC when she delivered Z.A. and that Ginyard was not acting within the scope

of her employment when she allegedly committed medical malpractice. Because Plaintiffs have

alleged specific facts challenging the United States Attorney's scope-of-employment

certification, the Court reviews that certification *de novo* and applies traditional principles of

state law. *McHugh*, 966 F.2d at 75.

In their filing, GSH/LJ argue that the Court should forbear from concluding that Ginyard

was an "employee" of CMDC because "[t]he exact nature of Dr. Ginyard's relationship with

CMDC is not set forth in the certification of Preet Bharara, and it remains to be seen whether Dr.

Ginyard was an actual employee of CMDC or otherwise had a contractual relationship with

CMDC." (Dkt. No. 12 at ¶ 4.) In support of this argument, GSH/LJ cite *Fan ex rel. Zu Hua*

*Chen v. United States*, No. 04 Civ. 9540, 2007 WL 1032304 (S.D.N.Y. Apr. 3, 2007), a case in

which Judge Patterson concluded that the treating physician—who had allegedly committed

medical malpractice—was an employee of NYU (a private entity), was compensated by NYU,

and was *not* an employee of any community health center that had been deemed a Public Health

Service employee.  *Id.* at *14.  In *Fan*, Judge Patterson observed that "[t]he circuits have consistently held that physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes."  *Id.* at *13.

The *Fan* analysis has no bearing on this case, which is more helpfully analogized to *Rosenblatt v. St. John's Hospital*.  In *Rosenblatt*, Judge Korman distinguished *Fan* by noting that the treating doctor was directly employed by a community health center, received compensation directly from that center, and was neither employed nor compensated by any other entity.  2012 WL 294518, at *6.  So too here.  Ginyard was employed and compensated by CMDC, and was neither employed nor compensated by GSH.  The Court accordingly concludes that Ginyard was an employee of CMDC and thus a federal employee at all times relevant to this case.

This leaves only the question whether Ginyard was acting within the scope of her federal employment while providing prenatal care to Bibi and attending to Bibi's labor and delivery. GSH/LJ argue that the answer is no, since Ginyard provided a critical part of this treatment outside a federally funded clinic (at GSH, not MFMC).  Plaintiffs add that Ginyard used a private delivery site, the nurse on duty assisting Ginyard was not a federal employee, and all the medical records are held by GSH rather than the United States.  For these reasons, GSH/LJ and Plaintiffs contend that the United States lacked the requisite control over Ginyard during the labor and delivery, and that Ginyard should be viewed as an independent contractor or, more simply, as an employee acting outside the scope of employment.  The Government responds by emphasizing that CMDC necessarily relies on private facilities for delivery sites and that such use of private facilities is contemplated by the applicable federal scheme.

Under applicable New York principles of law, the arguments advanced by GSH/LJ and

Plaintiffs do not succeed.  Judge Jones's analysis in an analogous case is directly on-point:

> [T]he Court finds that Yara [a doctor] was acting in the course of his employment
> with Soundview [a federally "deemed" community health center] when he
> performed the surgery on Delgado [the patient/plaintiff].  Yara submits that he
> treated Delgado in his capacity as a Soundview employee and that he admitted her
> to Our Lady of Mercy [a private hospital] because Soundview lacked the
> resources for the procedure she underwent.  According to Declarations submitted
> by Yara and Crystal Jordan, the Chief Operating Officer of Soundview, it is
> common practice that Soundview doctors will admit patients to hospitals where
> they have admitting privileges when a patient requires treatment that exceeds
> Soundview's resources.  Performing a surgery such as Delgado's at a hospital and
> not at Soundview was not a departure from Soundview's practices.  In fact,
> Soundview "fully supported and expected" that Yara, as a Soundview OB/GYN
> would need to admit and treat Soundview patients at a hospital.  Yara was not
> compensated for the treatment he provided Delgado apart from the regular
> compensation he receives as an employee of Soundview.

*Delgado*, 2007 WL 2994446, at *3.  *Rosenblatt* relied on the reasoning in *Delgado* to reach a

similar conclusion.  2012 WL 294518, at *19-26 (applying five-factor analysis under New York

law to hold that use of private medical facility by treating physician employed by community

health center did not result in action outside scope of federal employment).

This case is not different in any material respect.  Bibi was a patient of MFMC and had

received prenatal care there from Ginyard.  Bibi was admitted to GSH, as usually occurs with

CMDC patients, because MFMC lacks birthing sites.  Ginyard maintains admitting privileges at

a private facility (GSH) and attended to Bibi's labor and delivery as a CMDC employee.  CMDC

anticipated that Ginyard might need to admit Bibi to GSH and fully supported her doing so.

Ginyard's actual treatment of Bibi at GSH was within the scope of Ginyard's employment with

CMDC, and there is no evidence that Ginyard departed from her usual methods of performing

obstetrical medicine while at GSH.  Neither GSH/LJ nor Plaintiffs have suggested that Ginyard

acted beyond the scope of her employment while providing prenatal care to Bibi.  Accordingly,

13

the Court concludes that Ginyard was acting within the scope of her employment for purposes of claims against her in connection with the labor and delivery and pre-natal care given to Plaintiffs.

Because Ginyard was a federal employee acting within the scope of her employment in all pertinent respects, the Court concludes that the United States must be substituted for Ginyard as a party defendant in this case. Accordingly, the Government's motion to substitute itself as a party defendant in place of CMDC and Ginyard in the Removed Action is hereby granted.

**B.     Subject Matter Jurisdiction in the Removed Action and the Federal Action**

**1.     Applicable Law**

**a.     Administrative Exhaustion**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Rule 12(b)(1)). "In order to state a claim under the FTCA, the person attempting to assert it must comply with several strictly construed prerequisites . . . . Unless a plaintiff complies with that requirement, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999) (citations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). Thus, "[t]he burden is on the plaintiff to both plead and prove compliance with the statutory requirements." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (citations omitted).

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." *Celestine*, 403 F.3d at 82. A case removed from state court in which the United States is

14

substituted as a party defendant "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions."  28 U.S.C. § 2679(d)(4).

One such limitation is embodied in 28 U.S.C. §2401(b), which provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."  Thus, if an FTCA claim against the United States is not filed with the appropriate administrative agency within two years of the accrual of the claim, federal courts lack subject matter jurisdiction to hear the claim.

A second limitation concerns the filing of a claim with the appropriate federal agency:

> [A]n action shall not be instituted upon a claim against the United States for money damages for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have *first* presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added); *see A.Q.C.*, 715 F. Supp. 2d at 457.  Thus, where a plaintiff brings a tort claim that is ultimately removed to federal court and deemed subject to the FTCA, and does so before filing an administrative claim with the appropriate federal agency, the action must be dismissed for want of subject matter jurisdiction.  *See Gonzalez v. Fallon*, No. 98 Civ. 3505, 1998 WL 879692, at *2-3 (S.D.N.Y. Dec. 16, 1998) (Mukasey, J.).

### b.     The Westfall Act

The Federal Employees Liability Reform and Tort Compensation Act of 1988, also known as the "Westfall Act," offers some relief from this second rule.  *See Bueno v. Sheldon*, No. 99 Civ. 10348, 2000 WL 565192, *3 (S.D.N.Y. May 9, 2000).  In relevant part, it creates a safe harbor that covers some plaintiffs who bring claims in state court and then discover that the

defendant is, in fact, a federal employee protected by the FTCA's requirements.  Almost

invariably, these plaintiffs will have failed to comply with the requirement of first filing an

administrative claim.  Accordingly, § 2679(d)(5) provides:

> Whenever an action or proceeding in which the United States is substituted as the
> party defendant under this subsection is dismissed for failure first to present a
> claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be
> timely presented under section 2401(b) of this title if—
>
>> **(A)** the claim would have been timely had it been filed on the date the
>> underlying civil action was commenced, and
>
>> **(B)** the claim is presented to the appropriate Federal agency within 60
>> days after dismissal of the civil action.

"The 1988 statutory changes thus protected plaintiffs who initiated suit in state court without

realizing that the defendant was a federal entity."  *Nin v. Liao*, No. 02 Civ. 8308, 2003 WL

21018816, at *4 (S.D.N.Y. May 5, 2003); *see also Dominguez ex rel. Dominguez v. Verna*, No.

10 Civ. 4296, 2010 WL 4942225, at *4 (S.D.N.Y. Dec. 3, 2010) ("If a plaintiff files suit in state

court within two years of the date on which his claim accrued, [the Westfall Act] provides a way

for such a suit to continue.").  In cases where the claim would have been timely when the

underlying civil action was commenced, courts have noted that the appropriate procedure is to

dismiss and allow the plaintiff an opportunity to file their administrative claim within 60 days

after dismissal of the civil action.  *See Nin*, 2003 WL 21018816 at *5; *Rodriguez v. United

States*, No. 01 Civ. 4975, 2001 WL 1590516, at *2 n.4 (E.D.N.Y. Nov. 3, 2001).

    However, under § 2679(d)(5), a grant of permission to file within 60 days of dismissal for

failure to exhaust is not appropriate where an administrative claim would have been *untimely*

when the underlying civil action was commenced.  This implicates the first limitation described

above, namely the two-year statute of limitations created by § 2401(b).  The limitations period

starts to run only when a claim accrues, a determination controlled by federal law.  *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011) (citation omitted).  In the usual case, an FTCA claim accrues "at the time of injury."  *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).  However, that general rule is subject to modification under the "diligent discovery" doctrine and the principle of equitable tolling.

Where a plaintiff "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." *Kronisch*, 150 F.3d at 121.  For that reason, it is "settled law" that "a medical malpractice cause of action accrues under the FTCA once an injured plaintiff has notice . . . not [only] of harm but of iatrogenic [doctor-caused] harm, though . . . not necessarily of *negligent* iatrogenic harm." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177-78 (2d Cir. 2008) (citation omitted); *see also J.D. ex rel. Doe v. United States*, No. 10 Civ. 4296, 2011 WL 292010, at *7 (S.D.N.Y. Jan. 28, 2011) *aff'd sub nom. Dominguez ex rel. Dominguez v. United States*, 468 F. App'x 23 (2d Cir. 2012) ("Plaintiffs' claim accrued no later than October 2006, when they were on notice of the *possibility* that J.D.'s injury was caused by medical malpractice." (emphasis added)). "[D]iscovery of the 'critical facts' of injury and causation is not an exacting requirement . . . a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice."  *Kronisch*, 150 F.3d at 121.

"[E]quitable tolling [of an accrual date] is only appropriate in [ ] rare and exceptional circumstance[s] in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations and quotation marks omitted).  One such extraordinary circumstance arises where a "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant."

*Id.* (citations and quotation marks omitted).  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Id.* at 80-81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).

### 2.  Application of Law to Facts

#### a.  Dismissal of Claims in the Removed Action

Plaintiffs commenced the Removed Action in state court on February 8, 2011, but did not file an administrative claim with HHS until July 1, 2011, the date on which HHS received their submission.  *See* 28 C.F.R. § 14.2(a).  "The FTCA requires the filing of an administrative claim with the appropriate agency *prior* to initiating a lawsuit . . . [a] lawsuit *cannot* be instituted until the agency denies the claim or until six months have passed without a final disposition."  *Nin*, 2003 WL 21018816, at *4 (emphasis added).  Because Plaintiffs did not exhaust their administrative remedies before filing suit in state court, this Court lacks subject matter jurisdiction over their claims against the United States.  *Celestine*, 403 F.3d at 82.  The claims against the United States (substituted for CMDC and Ginyard) in the Removed Action therefore must be dismissed.  *See Gonzalez*, 1998 WL 879692, at *2-3.

#### b.  Dismissal of the Federal Action

Now that the claims against the United States in the Removed Action have been dismissed, the question remains whether the Federal Action must also be dismissed.  The Court concludes that it lacks subject matter jurisdiction over the Federal Action because Plaintiffs did not file their claim within the two-year statute of limitations period mandated by § 2401(b).

"Ordinarily, a plaintiff's FTCA claim accrues at the time of injury," which in this case occurred in or before February 2008.  *See Kronisch*, 150 F.3d at 121.  Plaintiffs filed the Federal Action in April 2012.  Accordingly, application of the default "time of injury" accrual rule would dictate the conclusion that Plaintiffs failed to act within the two year limitations period.

Plaintiffs argue that the Court should instead apply the "diligent discovery rule" to conclude that their claims accrued on December 13, 2010—the date on which Bibi consulted with and retained Ronemus & Vilensky to commence an action.  In the alternative, Plaintiffs argue that the Court should apply the doctrine of equitable tolling because Ginyard and CMDC allegedly hid their federal status from Plaintiffs.  Neither argument succeeds.

Plaintiffs first contend that application of the diligent discovery rule dictates an accrual date of December 13, 2010, the date on which Bibi consulted with and retained her counsel in this action.  Plaintiffs note that Bibi's consultation with an attorney in May 2008 occurred when Z.A. was three months old and argue that it would have been impossible at that point to ascertain whether the injury was iatrogenic due to lack of treatment, medical records, or knowledge of the severity of the injury.  Plaintiffs add that the attorney with whom Bibi consulted lacked skills in federal practice and caution that Z.A.'s injury may have resolved itself after May 2008.

The critical question is when "the plaintiff in a medical malpractice case learned that the injury [s]he suffered related in some way to the medical treatment [s]he received."  *Valdez*, 518 F.3d at 177.  "The notice must be not of harm but of iatrogenic [doctor-caused] harm, though . . . not necessarily of *negligent* iatrogenic harm."  *Id.* at 177-78.  When a patient possesses information that would suggest to a reasonably diligent person that an injury may have been caused by a doctor, a "duty to investigate" attaches.  *J.D.*, 2011 WL 292010, at *9; *Dominguez*, 2010 WL 4942225, at *5 ("A patient may have an obligation to seek information about whether

19

the harm he suffered may relate to the medical treatment he received."). Thus, "[w]hen it is not

clear that an injury was doctor-caused ('iatrogenic'), a plaintiff's claim accrues once he has an

obligation to seek information about whether the harm he suffered may relate to the medical

treatment he received." *J.D.*, 2011 WL 292010, at *8.

In *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011), the Second

Circuit clarified the application of diligent discovery doctrine to partially analogous facts. Judge

Lynch explained that "[o]nce an injured party (or in this case her guardian) knows enough to

warrant consultation with counsel, and acts with diligence (as did [the guardian]) to undertake

such consultation, conscientious counsel will have ample time to protect the client's interest by

investigating the case and determining whether, when, where, and against whom to bring suit."

*Id.* at 140. Noting that medical malpractice claims under the FTCA "can, and often will, accrue

*before* a plaintiff actually retains counsel and before counsel requests, let alone receives, the

relevant medical records," *id.* at 141, Judge Lynch observed that "[a]n accrual date that turns on

when a plaintiff (or [her] lawyers) finally decides to take action, rather than when the plaintiff

was sufficiently alerted to the appropriateness of seeking legal advice, would render the

limitations period meaningless," *id.* at 141-42. For that reason, he concluded that even under the

diligent discovery doctrine, a malpractice claim accrued when a plaintiff had enough reason to

suspect iatrogenic harm to consult with an attorney—even where the attorney then failed to act

within the limitations period. *See id.* at 143-44 (refusing to allow attorneys to manipulate accrual

dates by waiting to obtain and review medical records after consulting with clients). Thus,

although "it is not the attorney consultation itself that triggers the accrual date," the "acquisition

by the prospective plaintiff of sufficient information suggesting that an iatrogenic injury may

have occurred that she knows, or should know, enough 'to protect [her]self by seeking legal advice'" *does* trigger accrual.  *Id.* at 143 (citation omitted).

The Court accordingly concludes that the diligent discovery rule applies to this case and that Plaintiffs' claims accrued in May 2008—specifically, the date on which Bibi, by her own account, "consulted with an attorney regarding the injury" and discussed with that attorney whether Z.A.'s injuries were "caused by the actions of the doctor."  At this point, Bibi had been aware of Z.A.'s injury since shortly after Z.A.'s birth, since the discharge summary noted brachial plexus palsy/Erb's palsy.  The subject matter of Bibi's May 2008 consultation plainly discloses that Bibi had developed reason to suspect *iatrogenic* harm and seek legal advice, a fact that necessarily marked the accrual date for Plaintiffs' claims.  *See A.Q.C.*, 656 F.3d at 143.[3]

It is deeply unfortunate that, based on the limited facts contained in Bibi's declaration, the attorney with whom she first consulted failed to provide her with critical information about the legal rules that govern malpractice claims, undertake an investigation of the potential federal status of the defendants, or request documentation from GSH and CMDC.  It is possible that this first attorney's failure to effectively "protect the [prospective] client's interest by investigating the case and determining whether, when, where, and against whom to bring suit," *A.Q.C.*, 656 F.3d at 140, would justify a claim of legal malpractice.  But under settled doctrine, even if an attorney committed significant mistakes, those errors do not permit the Court to depart from the rule that reasonable suspicion of iatrogenic harm by a plaintiff triggers the limitations clock. Because Plaintiffs' claims accrued in May 2008, but Plaintiffs filed their federal suit in April

---

[3] The fact that Z.A.'s injuries may have resolved without further medical care does not alter this analysis.  The question is not whether a plaintiff had reason to suspect iatrogenic injury *that would not resolve without additional or expensive medical intervention*.  The question is simply whether a plaintiff had a basis to suspect iatrogenic injury.

2012, application of the diligent discovery rule does not situate these claims within the two-year limitations period prerequisite to a grant of subject matter jurisdiction.

In the alternative, Plaintiffs argue that the accrual date should be shifted to December 13, 2010 under the doctrine of equitable tolling. This argument hinges on the alleged concealment by Ginyard and CMDC of their federal status, the presence of non-federal personnel (including Lavecchia) at a non-federal facility (GSH), and Plaintiffs' stated diligence in consulting with an attorney in May 2008 and taking Z.A. to a series of doctor's appointments. In support of this argument, Plaintiffs cite *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 183 (2d Cir. 2008), an opinion in which the Second Circuit characterized as "a special circumstance that *may* warrant equitable tolling" a scenario in which defendants fail "to disclose that physicians . . . who provide services in private voluntary hospitals and in what appear to be private clinics, are *de jure* federal employees." *Id.* at 183 (emphasis added); *see also id.* ("The number of cases in which the United States has sought to take advantage of this trap suggests that it is aware of the consequences of its failure to disclose the material facts of federal employment by doctors who might reasonably be viewed as private practitioners." (citations omitted)).

The Second Circuit, however, has since read the *Valdez* dicta narrowly, *see A.Q.C.*, 656 F.3d at 146, and cautioned that "it is not clear that equitable tolling is even available in medical malpractice actions brought pursuant to the FTCA," *id.* at 144. Equitable tolling is particularly inappropriate where HHS has "provided a toll-free number and a publicly available database through which [Plaintiffs could have] ascertain[ed] the federal nature of the relevant defendant" *and* a plaintiff has consulted with counsel capable of accessing these resources. *Id.* at 146. Here, both circumstances are present: publicly available information about the defendants' federal status and initial consultation with an attorney capable of ascertaining this fact in May 2008.

22

This case is in many respects similar to *J.D. v. United States*, where Judge Cote rejected a nearly identical argument.  *See* 2011 WL 292010, at *1.  In *J.D.*, the "[p]laintiffs argue[d] that their delay was the result of being unaware that the Center was a federally-funded facility, and that claims against it would therefore be subject to the statute of limitations under the FTCA."  *Id.* at *11.  Judge Cote noted that "[t]his is not an extraordinary circumstance," noting, *inter alia*, that "[p]laintiffs have not alleged that the government misled or deceived [them], or otherwise hid[ ] the legal identity of alleged tortfeasors as federal employees."  *Id.* (quotation marks and citations omitted).  So too here.  Plaintiffs have not specified any deception on the part of any defendants.  Thus, the Court cannot conclude that "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant."  *Zerilli-Edelglass*, 333 F.3d at 80.

In sum, Plaintiffs' claims accrued in May 2008.  Plaintiffs did not file the Federal Action until April 2012.  The Court therefore lacks subject matter jurisdiction over that case.

### C.        Application of the Westfall Act to the Removed Action

The limitations analysis performed above also bears on the applicability of the Westfall Act to claims in the Removed Action.  If Plaintiffs had commenced their state court action within two years of the accrual date for their claims, then they might be entitled to an opportunity to file an administrative claim with HHS within 60 days of the dismissal of the Removed Action.[4]  As the Court has already noted, however, Plaintiffs' claims accrued in May 2008 and they commenced their state court action in February 2011.  Because these claims were filed in an untimely fashion, Plaintiffs cannot invoke the Westfall Act and their claims in the Removed Action are forever barred.  *See* 2679(d)(5)(A) (providing that the Westfall Act applies only if

---

[4] This assumes that no other procedural roadblock foreclosed that statutory entitlement.

"the claim would have been timely had it been filed on the date the underlying civil action was commenced").

### D.      Supplemental Jurisdiction Over Remaining Claims in the Removed Action

The only basis for removal of the Removed Action from state court was the claim, upon substitution of the United States as a defendant, against the United States under the FTCA. Having dismissed that claim for lack of subject matter jurisdiction, this Court no longer has original jurisdiction over the Removed Action.  In order to hear the remaining claims against the remaining Removed Action Defendants, this Court would have to exercise supplemental jurisdiction.  However, the Court "cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).  In the Removed Action, there is no subject matter jurisdiction under the FTCA for any claim against the Government.  Thus, there is no proper basis for original jurisdiction and the Court cannot exercise supplemental jurisdiction over the other claims in that case. *See Dolan v. U.S. Army,* No. 98 Civ. 5110, 1999 WL 199012, at [*]4 (S.D.N.Y. Apr. 9, 1999).

Moreover, where the only claim as to which original jurisdiction was asserted has been dismissed early in the case, this Court should decline to exercise supplemental jurisdiction over any related state law claims. *See* 28 U.S.C. § 1367(c)(3); *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 102-03 (2d Cir. 1998) (noting that "when all federal claims are eliminated in the early stages of the litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice"). Thus, even if the Court had the discretion to exercise supplemental jurisdiction over the other claims in the Removed Action, the Court would decline to do so.

24

Given the outstanding state claims against the remaining defendants, the Removed Action is remanded to the New York State Supreme Court, Rockland County. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 351-57 (1988) (holding that "[w]hen the single federal-law claim in the action [i]s eliminated at an early stage of the litigation" the district court may relinquish jurisdiction over the case by remanding the remaining claims to state court).

**III.   Conclusion**

For the foregoing reasons, the Government's motion to substitute itself as a party defendant for Ginyard and CMDC in 12 Civ. 4990 is GRANTED.  The Government's motions to dismiss the claims against the United States for lack of subject matter jurisdiction in 12 Civ. 2867 and 12 Civ. 4990 are GRANTED.  Plaintiffs' remaining claims in 12 Civ. 4990—against Joyce Lavecchia, R.N., R.N. Smith, and Good Samaritan Hospital—are REMANDED to the New York Supreme Court, Rockland County.

In 12 Civ. 2867, the Clerk of Court is directed to close the motion at Dkt. No. 6 and to close the case.

In 12 Civ. 4990, the Clerk of Court is directed to close the motion at Dkt. No. 5 and to close the case.

SO ORDERED.


Dated: New York, New York
       February 11, 2013

_____
J. PAUL OETKEN
United States District Judge